IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00633-RBJ

DIMITRIC AUSTIN,

      Applicant,

v.

KEVIN MILYARD, and
JOHN SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

---

This matter is before the Court on Applicant Dimitric Austin's *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. #1), filed on March 14, 2011. Respondents filed an Answer to the Application (Doc. #25) and Applicant has filed a Traverse (Doc. #36). Having considered the same, along with the state court record, the Court has determined that the Application can be resolved on the parties' briefing and that no oral argument or evidentiary hearing is necessary.

**I. Background**

On June 2, 2003, a jury in the District Court for Arapahoe County, Colorado ("the trial court"), 02CR2581, convicted Applicant of first degree assault.[1] The following accurate statement of relevant facts is taken from the Colorado Court of Appeals' decision on direct appeal of Applicant's conviction in *People v. Austin* ("*Austin II*"), 04CA0713 (Colo. App. Nov. 15, 2007) (unpublished):

---

[1]State Court R. 6/2/03 Trial Tr., at 98.

[O]n September 15, 2002, while defendant was in custody at the Arapahoe County Jail, he strangled another inmate following an argument about what channel to watch on television.  A deputy testified that at approximately 11:30 a.m., he saw a struggle between two men from the tower, and that one of them was defendant.  Another deputy testified that as he entered the dayroom to investigate, he saw defendant place the victim on the floor, holding him by his shirt collar.  When the deputy reached the two men, the victim was unconsciousness [sic] and unresponsive.

The victim told his treating physician at the hospital he was watching television at the jail when someone came up behind him and strangled him.  At the hospital, the victim identified defendant as his attacker from a photo line-up and said defendant had attacked him from behind following an argument.  According to the victim, defendant had yelled "Football rules" and "You young motherfuckers," and soon afterwards, the victim was attacked from behind.  The victim's doctor testified that the victim's injuries were consistent with being strangled by some type of ligature.

At trial, the victim recanted and said he had been mistaken about his attacker's identity.  Several other inmates reportedly were near the struggle, but most of them denied seeing anything.  None wanted to testify at trial, but one inmate was forced to do so or to be held in contempt.  He testifie[d] that he heard an argument and saw defendant walk to his cell, come back with a piece of sheet or towel, choke the victim from behind, and drag him to the floor.  Before trial, that inmate had given a similar version of the events in a letter to the investigating deputy.[2]

Following his jury trial, Applicant was adjudicated a habitual criminal.[3]  On September 8, 2004, the state trial court sentenced him to sixty-four years of imprisonment with the Colorado Department of Corrections.[4]

---

[2]*Austin II*, Doc. #10-7, at 1-2.

[3]State Court R. 9/4/08 Hrg. Tr., at 114.

[4]*Id.* at 115.

The Colorado Court of Appeals affirmed Applicant's conviction on direct appeal in *Austin II*. The Colorado Supreme Court denied his petition for certiorari review on February 25, 2008.[5]

Applicant filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c) on August 13, 2008, alleging ineffective assistance of trial and appellate counsel.[6] The trial court denied the motion on February 6, 2009.[7] The Colorado Court of Appeals affirmed the trial court's order in *People v. Austin (Austin III)*, 09CA0552 (Colo. App. Sept. 16, 2010) (unpublished).[8] The Colorado Supreme Court denied Applicant's petition for certiorari review on February 14, 2011.[9]

## II.  Habeas Claims

Applicant filed his § 2254 Application on November 14, 2011. The Application raises ten claims:

> 1. The trial court deprived him of his constitutional right to present a defense when it rejected his self-defense instruction and instructed the jury improperly on the provocation exception to self-defense.
>
> 2. The trial court erred in denying his motion to suppress his 1983 Missouri conviction in violation of the Fifth and Fourteenth Amendments.
>
> 3. The trial court erred in denying his motion for a special prosecutor in violation of the Fourth Amendment.

---

[5] Doc. #10-13.

[6] State Court R. vol. 2, at 517.

[7] *Id.* at 565.

[8] Doc. #10-17.

[9] Doc. #10-19.

4. The trial court erred in determining that the prosecution presented sufficient evidence that he had previously been convicted of three felonies, in violation of the Fifth and Fourteenth Amendments.

5. Trial counsel was ineffective in failing to impeach a prosecution witness with his prior felony convictions.

6. Trial counsel was ineffective in failing to interview the prosecution's witnesses.

7. Trial counsel was ineffective in failing to call the defense investigator as a witness to impeach the credibility of a prosecution witness.

8.Trial counsel was ineffective in failing to retain a defense expert.

9.The trial court erred in denying his motion to preclude use of his Ohio convictions in the habitual criminal trial in violation of his Sixth Amendment right to confront witnesses.

10. Appellate counsel was ineffective in failing to challenge his prior Ohio convictions on direct appeal.

Upon preliminary review of the Application, Magistrate Judge Boyd N. Boland ordered

the Respondents to file a pre-answer response addressing the affirmative defenses of timeliness

and exhaustion of state remedies.  Respondents conceded in their pre-answer response that the

Application was timely, but argued that Applicant failed to exhaust state remedies for his third

claim.  Respondents further argued that Applicant procedurally defaulted his ninth claim in the

state courts.  The Court dismissed claims three and nine as procedurally barred from federal

habeas review.[10]  The Court further found, however, that Applicant exhausted state remedies for

his remaining claims.[11]  Claims one, two, four, five, six, seven, eight and ten of the Application

---

[10]*See* July 5, 2011 Order to Dismiss in Part (Doc. #20).

[11]*Id.*

4

were drawn to a District Judge and to a Magistrate Judge.[12]  The Court reviews the merits of

those claims below.

### III.  Legal Standard

### A.  Habeas Corpus Actions

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with

respect to any claim that was adjudicated on the merits in state court unless the state court

adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28

U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold

question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was

clearly established by the Supreme Court at the time his conviction became final.  *See Williams

v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision."  *Id.* at 412.  Furthermore, clearly established law consists of Supreme Court holdings

in cases where the facts are at least closely-related or similar to the case sub judice.  Although

the legal rule at issue need not have had its genesis in the closely-related or similar factual

context, the Supreme Court must have expressly extended the legal rule to that context.  *House v.*

---

[12]*Id.*

5

*Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

A state court decision is contrary to clearly established federal law if: (a) the state court "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'"; or (b) "'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.  *House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that

application must also be unreasonable." *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Under § 2254(d), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 131 S.Ct. 770, 786-87 (2011).

The Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999); *see also Harrington*, 131 S.Ct. at 785 ("§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits.").

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to that court.  Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.

Finally,  if the state courts failed to adjudicate a federal claim raised by the Petitioner, the Court consider the claim de novo and the deferential AEDPA standard of review does not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

**B.  *Pro Se* Litigant**

Applicant is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). A court may not assume that an applicant can prove facts that have not been alleged or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Applicant's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## IV.  Analysis

### A.  Claim One

Applicant asserts in his first claim that the trial court deprived him of his constitutional right to present a defense when it rejected his self-defense instruction and instructed the jury improperly on the provocation exception to self-defense.

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). Instead, an error in a trial proceeding must be one that implicates "fundamental fairness" in order to implicate the Constitution. *Estelle v. McGuire*, 502 U.S. 62, 73 (1991); *see also Calderon v. Coleman*, 525 U.S. 141, 145 (1998) ("a federal court may grant habeas relief based on trial error only when that error 'had substantial and injurious effect or influence in determining the jury's

verdict'") (citation omitted)).  "An omission, or an incomplete instruction, is less likely to be

prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  In

the context of jury instructions, fundamental fairness requires that a criminal defendant be

provided a meaningful opportunity to present a complete defense, and incorrect jury instructions

may divest a defendant of this opportunity.  *See Mathews v. United States*, 485 U.S. 58, 63

(1988); *see also Bradley v. Duncan*, 315 F.3d 1091, 1096 (9th Cir. 2002) (finding that a court's

failure "to correctly instruct the jury on [a] defense may deprive the defendant of his due process

right to present a defense.").  However, federal habeas relief is available only when "'the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due

process.'" *Estelle*, 502 U.S. at 71 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  As

such, "[a] § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based

on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir .1997).

The improper instruction "may not be judged in artificial isolation," *id*. (quotation omitted), but

must be considered "in the context of the instructions as a whole and the trial record." *Estelle*,

502 U.S. at 72.

### 1.  *Self-Defense Instruction*

Applicant challenges the following instruction that the trial court gave to the jury:

Instruction 13: The evidence presented in this case has raised an affirmative
defense. The prosecution has the burden of proving the guilt of the defendant to
your satisfaction beyond a reasonable doubt as to the affirmative defense, as well
as to all of the elements of the crime charged.

After considering the evidence concerning the affirmative defense with all of the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty.[13]

In addition, the trial court instructed the jury separately on the affirmative defenses of

self-defense and defense of others, on the prosecution's burden of proof, and on the lesser

included offenses.[14]

The trial court rejected Applicant's tendered instruction, which stated:

The evidence in this case has raised an affirmative defense of self-defense as stated in instruction No. __.

The prosecution has the burden of establishing that self-defense should not apply in this case, as well as providing beyond a reasonable doubt all the elements of the crimes charged. The law never imposes a burden of proof upon the defendant in a criminal case.

After considering the evidence concerning the affirmative defense with all the other evidence in this case, if you are not convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of not guilty. After considering the evidence concerning the affirmative defense with all the other evidence in this case, if you are convinced beyond a reasonable doubt of the defendant's guilt, you must return a verdict of guilty, as to the count, or the lesser included offense within a count, of which you are convinced beyond a reasonable doubt of the defendant's guilt.[15]

On direct appeal, the state appellate court upheld the instructions given by the trial court:

We conclude the instructions given by the court, viewed as a whole, sufficiently informed the jury of the relevant law.  One instruction explained the applicable burden of proof and another instruction explained that self-defense or the defense of others were affirmative defenses. Two other instructions explained lesser included offenses and their constituent elements and requisite burdens of proof. Because these instructions were correct statements of law and fairly and

---

[13]State Court R. vol. 1, at 215.

[14]*Id.* at 204, 207, 216, 217-218.

[15]*Id.* at  201.

adequately covered the issues presented, we conclude the trial court did not err in refusing defendant's tendered instruction.[16]

This Court is bound by the state appellate court's determination that the jury instructions accurately advised the jury concerning Colorado law of self-defense.  *See Estelle*, 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  And, Applicant has otherwise failed to demonstrate that the challenged instruction rendered his trial fundamentally unfair, in light of the other instructions given by the trial court.  *Id*. at 72.  As such, the Court finds that the state appellate court's resolution of Applicant's claim was not contrary to, or an unreasonable application of clearly established federal law.  Applicant therefore is not entitled to federal habeas relief for his claim.

**2.  *Provocation Instruction***

Applicant also asserts in claim one that the trial court's instruction to the jurors on the provocation exception to self-defense deprived him of his due process right to a fair trial because there was no evidence to support the additional instruction.

The Court gave the following instruction to the jurors on the affirmative defense of self-defense:

> Instruction 14.  It is an affirmative defense to the crimes of Criminal Attempt to Commit First Degree Murder, Criminal Attempt to Commit Second Degree Murder, First Degree Assault, Second Degree Assault, and Third Degree Assault that the defendant used physical force upon another person: First, in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the other person; and two, he used the degree of force which he reasonably believed to be necessary for that purpose.

---

[16] *Austin II*, Doc. #10-7, at 5.

The defendant is not justified in using physical force if, with intent to cause bodily injury or death to another person, he provoked the use of unlawful physical force by that person.[17]

On direct appeal, the Colorado Court of Appeals determined that the provocation instruction was unwarranted because there was no evidence that the victim was provoked into starting the fight.[18]  The state appellate court nonetheless concluded that reversal was not required because the error did not rise to the level of plain error:

> Nor are we persuaded by [Applicant's] contention that the provocation instruction mislead [sic] or confused the jury. In [*People v. Silva*, 987 P.2d 909 (Colo. App. 1999)], on which he relies, the defendant raised self-defense and the defense of others and presented evidence to support these defenses. In concluding the error was not harmless, the *Silva* court found it relevant that the court had not properly instructed the jury about defendant's theory of the case.

> Here, in contrast, the People did not claim there was provocation, but argued that defendant had initiated the attack on victim. We therefore conclude there was no reasonable possibility this error contributed to the verdict or undermined the fundamental fairness of the trial itself. Accordingly, the instruction on provocation exception does not constitute plain error.[19]

The burden of showing that an erroneous jury instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court judgment is heavier than the showing required to establish plain error on direct review. *Henderson*, 431 U.S. at 154.   In this case, the erroneous jury instruction did not render Applicant's trial fundamentally unfair in violation of due process.   The prosecution presented evidence that immediately before the attack, the victim argued with an unidentified inmate over what program to watch on television.[20]

---

[17]State Court R. 6/2/03Trial Tr., at 29.

[18]*Austin II*, Doc #10-7, at 9.1

[19]*Id.* at 10-11.

[20]State Court R. 5/29/03 Trial Tr., at 69-71.

Several minutes later, the Applicant attacked the victim from behind.[21]  There was no evidence

that Applicant was provoked.[22]  As such, the Court of Appeals' determination that the jury

instruction on provocation did not prejudice Applicant at trial was reasonable in light of the

evidence presented in the state court proceeding and comported with federal due process law.

Applicant therefore cannot prevail on his first claim for relief.

## B.  Claims Two and Ten

In claims two and ten, Applicant contends that his adjudication as a habitual criminal

violates his constitutional rights because the prior convictions upon which the determination was

based are unconstitutional.  In claim two, he challenges the constitutionality of a prior conviction

for first degree sexual abuse in the State of Missouri.  Claim Ten urges that appellate counsel

was ineffective in failing to challenge on direct appeal Applicant's two prior convictions for

attempted rape and a conviction for carrying a concealed weapon in the State of Ohio.  Applicant

asserts that all of the prior convictions, which were obtained pursuant to his guilty pleas, were

not knowing, intelligent, and voluntary and, therefore, violated his federal due process rights.

He further suggests that his trial counsel was constitutionally ineffective in the plea proceedings.

To obtain relief under 28 U.S.C. § 2254, the Applicant must be "in custody" under the

challenged judgment.  Applicant has served his sentences for the 1980 and 1983 convictions, but

he satisfies the in-custody requirement because the convictions were used to enhance the

sentence he is now serving.  *See Lackawanna Cnty. Dist. Att'y v. Coss* ("*Lackawanna*"), 532 U.S.

---

[21]*Id.*, 5/28/03 Trial Tr., at 70-71, 82.

[22]*Id.*

394, 401 (2001).  Generally, however, a prior conviction is not subject to review under 28 U.S.C.

§ 2254:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own
> right because the defendant failed to pursue those remedies while they were
> available (or because the defendant did so unsuccessfully), the conviction may be
> regarded as conclusively valid. If that conviction is later used to enhance a
> criminal sentence, the defendant generally may not challenge the enhanced
> sentence through a petition under § 2254 on the ground that the prior conviction
> was unconstitutionally obtained.

532 U.S. at 403–04 (citation omitted).  The *Lackawanna* majority recognized only one exception

to the rule: "where there was a failure to appoint counsel in violation of the Sixth Amendment, as

set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)." *Lackawanna*, 532 U.S. at 404.

However, a plurality of the Court suggested that there may also be an exception in the rare case

"in which no channel of review was actually available to a defendant with respect to a prior

conviction, due to no fault of his own." *Id*. at 405.  This second exception applies only in narrow

circumstances because "a defendant properly bears the consequences of either foregoing

otherwise available review of a conviction or failing to successfully demonstrate the

constitutional error." *Id.* at 405.  The plurality cited two examples where the second exception

might apply: where the state court refuses, without justification, to rule on a properly presented

constitutional claim; or, when the habeas petitioner obtains evidence of actual innocence after

the time for direct or collateral review has expired.  *Id*.  The Supreme Court explained that "[i]n

such situations, a habeas petition directed at the enhanced sentence may effectively be the first

and only forum available for review of the prior conviction." *Id.* at 406.  The Tenth Circuit has

recognized the second exception noted by the *Lackawanna* plurality.  *See Broomes v. Ashcroft*,

358 F.3d 1251, 1254 (10th Cir. 2004).

In this case, the state court record reflects that Applicant was represented by counsel during his plea proceedings in the Ohio and Missouri cases[23] and he does not contend otherwise. As such, Applicant cannot satisfy the first exception to the *Lackawanna* rule.  Furthermore, upon careful consideration, the Court finds and concludes that Applicant does not meet the narrow second exception recognized by the *Lackawanna* plurality for the reasons discussed below.

The constitutionality of the prior convictions has been litigated twice in the Colorado state courts.  A summary of those proceedings aids the Court's explanation as to why the second *Lackawanna* exception does not apply to Petitioner's claims.  The State of Colorado first attempted to use the prior convictions against Applicant as habitual criminal counts filed in Denver District Court Case No. 97CR478 ("the Denver case").   The defense in the Denver case filed a motion to suppress the convictions on the ground that the pleas were not knowing, intelligent and voluntary and, therefore, were obtained in violation of Applicant's due process rights.  The Denver District Court held an evidentiary hearing in March 1998.  Applicant testified on factual matters relating to the timeliness of the collateral challenge under Colorado law and the merits of the constitutional claims.[24]  He explained that he had not challenged his prior convictions in the Ohio and Missouri state courts because he relied on affirmative statements from Ohio trial judges during the 1980 plea proceedings that once he pleaded guilty, he would be foreclosed from attacking those convictions in a court of law.[25]  Applicant recalled in particular that one of the Ohio trial judge's told him: "[O]nce you enter a guilty plea, you

---

[23]State Court R. vol. 2, at 380-393.

[24]*See generally id.* at 309-368.

[25]State Court R. vol. 2, 313-17, 326.

can't take it back."[26]  Applicant further testified that his trial counsel in Ohio and Missouri did not inform him of his right to appeal or challenge his convictions collaterally.[27]

The Denver District Court found Applicant's unrebutted testimony sufficient to establish "circumstances amounting to justifiable excuse or excusable neglect" such that Applicant's collateral attack on his prior convictions was not time barred under the three-year limitation period provided for in COLO. REV. STAT. § 16-5-402, C.R.S. (2010).

On the merits of his constitutional claims, Applicant testified in the Denver case  that his counsel for the first Ohio plea told him that he could not testify because he would "hang himself."[28]  Applicant further stated that court-appointed counsel for the second plea proceeding did not discuss with him whether he should testify at a trial.[29]  With regard to the 1983 Missouri conviction, Applicant testified that: (1) his attorney told him that he could not testify at trial because he had two prior felonies; and, (2) his plea was based upon his understanding that he would be given credit for time served and released from custody.[30]  Applicant further stated that after he entered his guilty plea in Missouri, the Ohio authorities lodged a detainer against him based on a parole violation (conviction of a felony); he was extradited to Ohio where his parole was revoked; and, he was sentenced to five years in the Ohio Department of Corrections.[31] Applicant testified that his attorney never advised him of this possible consequence of his guilty

---

[26]*Id.* at 358.

[27]*Id.*, and 319-20, 327.

[28]*Id.* at 327, 347-48.

[29]*Id.* at 356.

[30]*Id.* at 315, 329-330.

[31]*Id.* at 329-31, 355.

plea.[32]  The Denver District Court determined that counsels' statements to Applicant that he could not testify in his own defense in the Ohio and Missouri cases rendered his pleas invalid and that the unconstitutional convictions could not be used to enhance any sentence imposed in the Denver case.[33]

Following the March 1998 hearing in the Denver case, Applicant did not attempt to challenge his prior convictions in the Ohio and Missouri state courts.[34] When the prosecution filed three habitual criminal counts in Arapahoe District Court Case No. 02CR2581, Applicant again filed a motion to suppress the convictions as unconstitutional.[35]  The state trial court rejected Applicant's argument that the substantive rulings in the Denver case had preclusive effect in the 2002 case under the doctrine of collateral estoppel.  The state court found, however, that Applicant reasonably relied on the Denver District Court's 1998 ruling of unconstitutionality in not challenging his Ohio and Missouri convictions after that date.[36]

At a subsequent evidentiary hearing on Applicant's motion to suppress the prior convictions, the state trial court considered the transcript of Applicant's testimony from the hearing in the Denver case; a letter from the trial judge who presided over the Missouri plea; a transcript of Applicant's plea proceeding in the Missouri case; an affidavit from the attorney who represented Applicant in the Ohio cases; and, a letter and affidavit from the trial judges who

---

[32] *Id.* at 330-31.

[33] *Id.*, 5/22/034 Hrg. Tr., at 11; 05/27/03 Hrg Tr., at 5.

[34] *Id.*, 4/17/03 Hrg. Tr., at 15.

[35] *Id.*, vol. 1, at 125-27.

[36] *Id.*, 4/21/03 Hrg. Tr., at 49-50.

presided over Applicant's plea proceedings in the Ohio cases.[37] The state trial court determined

that Applicant's motion to suppress the prior convictions was not time-barred for reasons similar

to those found by the Denver District Court, but concluded based on the record before it that

Applicant had failed to show that his convictions by guilty plea were constitutionally invalid.[38]

Applicant was then adjudicated a habitual offender.

Construing Applicant's filings liberally, he essentially argues in this federal habeas

proceeding that the Ohio trial judges' alleged admonishment to him in 1980 that if he pleaded

guilty, he could not "take it back," satisfies the second exception to *Lackawanna's* rule.  The

Court is not persuaded.  First, Applicant cannot show that he was denied a forum in the Ohio and

Missouri state court system to challenge the constitutionality of his convictions because he has

never attempted to attack his prior convictions in the sentencing courts.  Second, even if

Applicant was misinformed by the Ohio trial court about his ability to challenge his convictions,

his reliance on the court's statements to excuse his failure to seek relief in the Ohio and Missouri

courts is not reasonable in light of his own testimony in the Denver case that he was dissatisfied

with his Missouri plea and attempted to seek advice from an attorney, but abandoned any

pursuit of legal remedies at the outset because he could not afford to retain counsel.[39]  Applicant

also testified that he has not attempted to determine his legal rights through consultation with

outside *pro bono* legal services or through the prison legal services available to him.[40]

---

[37] *See generally id.*, vol. 2, at 309-398; *see also* 5/27/03 Hrg. Tr.

[38] *Id.*, 5/27/2003 Hrg. Tr. at 2-11.

[39] State Trial R. vol. 2, at 323-234, 329..

[40] *Id.* at 326.

By Applicant's own account, he believed he had reason to challenge his Missouri plea in 1983, but thereafter he did not seek relief from that conviction or his Ohio convictions in the state sentencing courts.  Ignorance of the law does not excuse his failure to obtain timely federal habeas review of his constitutional claims.  *Davis v. Roberts*, 425 F.3d 830, 835-36 (10th Cir. 2005) (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.") (internal quotation marks omitted).  Moreover, "[s]entencing courts do not have a duty to advise defendants of the right to appeal following a plea of guilty." *Carthen v. Workman*, 121 Fed. Appx. 344, 347 (10th Cir. 2005) (unpublished) (holding that state inmate failed to prove that he came within an exception that would allow him to challenge an expired conviction in a § 2254 application) (citing *Crow v. United States*, 397 F.2d 284, 285 (10th Cir. 1968)).

Similarly, to the extent Applicant attributes his lack of knowledge to plea counsel, "attorneys do not have an absolute duty . . . to inform a defendant who has pled guilty of his right to appeal." *Id.* (citing *Laycock v. New Mexico*, 880 F.2d 1184, 1187-88 (10th Cir. 1989). In any event, Applicant is not entitled to an exception based on his assertions that his counsel in Ohio or Missouri provided inadequate representation. *Davis*, 425 F.3d at 835 (under *Lackawanna*, there is no remedy under § 2254 for ineffective assistance of counsel with respect to prior conviction).          Finally, Applicant has not presented any compelling evidence that he is actually innocent of the crimes for which he was convicted in Ohio or Missouri.

In short, Applicant has failed to demonstrate that he did not have the opportunity to challenge the validity of his 1980 Ohio pleas and his 1983 Missouri plea in a direct or collateral

proceeding in those states.  The Court thus cannot find that this federal habeas proceeding is "the

first and only forum available for review of the prior conviction." *See Lackawanna*, 532 U.S. at

406.  Because Applicant does not meet an exception recognized by *Lackawanna*, he is not

entitled to federal habeas review of his second and tenth claims under 28 U.S.C. § 2254.  *Id.* at

403-04.

   **1.**   ***Merits of claim two***

   Even if Applicant could challenge the validity of his prior Missouri conviction in this

action, he cannot prevail on his claim.  Due process of law requires that a guilty plea must be

knowing, voluntary and intelligent.  *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *Brady v.*

*United States*, 397 U.S. 742, 748 (1970).  To enter a plea that is knowing and voluntary, a

defendant must have "a full understanding of what the plea connotes and of its consequence."

*Boykin*, 395 U.S. at 244.  A defendant must be "fully aware of the direct consequences" of the

plea, but need not be aware of all collateral consequences. *Brady*, 397 U.S. at 755 (internal

quotation marks and citation omitted); *U.S. v. Krejcarek*, 453 F.3d 1290, 1296-97 (10th Cir.

2006).

   Further, where a habeas petitioner alleges that he received ineffective assistance of

counsel in connection with his entry of a guilty plea, the petitioner must demonstrate that

counsel's performance was deficient and that "there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill v. Lockhart*, 474 U.S. 52, 58-60 (1985) (declining to decide whether counsel's alleged

provision of erroneous advice to petitioner about his parole eligibility under the sentence agreed

to in the plea bargain constituted substandard performance because petitioner failed to show that he was prejudiced).

On direct appeal of Applicant's 2003 Colorado conviction, the Colorado Court of Appeals determined that the trial court's findings upholding the validity of Applicant's plea were supported by the record and therefore concluded that the trial court did not err in denying Applicant's motion to suppress his Missouri conviction.[41]  The state trial court found specifically that the Missouri trial court advised Applicant of his right to testify in his own defense.  This factual finding is presumed correct and is supported by the transcript of the August 15, 1983 Missouri providency proceeding.[42]  Thus, even if Applicant's attorney did tell him that he could not testify because of his prior felony convictions in Ohio, the trial court corrected this misstatement of the law and advised Applicant correctly that he did have the right to testify in his own defense.  Applicant then affirmed that he understood this right and that he was waiving it.  "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Applicant has failed to rebut his own statements in open court that he understood and gave up his right to testify with any clear and convincing evidence that his waiver was the product of misunderstanding or duress.  *Id.* at 75.

The state trial court did not make a specific finding with regard to Applicant's assertion that he was promised immediate release from custody if he pleaded guilty.[43]  However, the state court record reflects that Applicant was discharged, based on time served, at the conclusion of

---

[41] *See Austin II*, Doc. #10-7, at 11 (citing *People v. Austin* (*Austin I*), 04CA2386 (Colo. App. Oct. 25, 2007), Doc. #25-1 at 19-20).

[42] The Missouri trial judge specifically advised Applicant: "[Y]ou have a right to testify yourself.  Do you want to give up this right?"  And Applicant responded: "Yes."  State Court R. vol. 2, at 388.

[43] State Court R. 5/27/2003 Hrg. Tr., at 9-10.

the plea proceeding for the Missouri felony conviction, in accordance with the plea agreement.[44]

The transcript of Applicant's providency proceeding is silent as to any possible detainer being

lodged against Applicant, a parolee, as a result of his guilty plea to a felony.[45]   Applicant appears

to assert that both the Missouri trial court and his plea counsel were obliged to advise him that he

would be in violation of his parole on the Ohio convictions if he pleaded guilty to the Missouri

charge.

   At the time Applicant's conviction was final in 2008,[46] clearly established federal law

held that a defendant pleading guilty must be informed by the trial court of the "direct"

consequences of his guilty plea.  *See Brady*, 397 U.S. at 755.  However, the Supreme Court had

not resolved a disagreement among the courts over how to distinguish between direct and

collateral consequences of a guilty plea, or articulated whether, or under what circumstances, the

trial court or defense counsel is obligated to advise a defendant that the offense to which he is

pleading guilty will result in a penalty separate from the sentence imposed for that offense.  *See*

*Padilla v. Kentucky*, 130 S.Ct. 1473, 1481 n. 8 (2010) (citing Roberts, *Ignorance is Effectively*

*Bliss: Collateral Consequences, Silence, and Misinformation in the Guilty–Plea Process*, 95

Iowa L. Rev. 119, 124, n.15 (2009)).  In 2010, the Supreme Court held in *Padilla* that defense

counsel has an obligation to advise his client that a guilty plea would make him subject to

---

[44]*Id.*, vol. 2, at 393.

[45]*Id.* at 380-393.

[46]The Colorado Supreme Court denied Applicant's petition for certiorari review of the Colorado
Court of Appeals' November 15, 2007 decision on February 25, 2008.  Applicant's conviction became final
ninety days later, when the time for filing a petition for certiorari review with the United States Supreme
Court expired. *See Caspari v. Bohlen*, 510 U.S. 383, 390 (1994) (explaining that a conviction becomes
final when the availability of a direct appeal has been exhausted, and the time for filing a certiorari petition
with the Supreme Court has elapsed or the Court has denied a timely certiorari petition); Sup. Ct. R. 13.1.

automatic deportation pursuant to federal statutes and that the failure to provide such advice

constituted ineffective assistance of counsel.  The Court recognized, however, that before

*Padilla*, most state and federal courts had considered the failure to advise a client of potential

collateral consequences of a conviction to be outside the requirements of the Sixth Amendment.

*See Padilla*, 130 S.Ct. at 1481 n. 9 (collecting cases); *see also* Gabriel J. Chin & Richard W.

Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87

CORNELL L. REV. 697, 699 (2002) ( "[E]leven federal circuits, more than thirty states, and the

District of Columbia have held that lawyers need not explain collateral consequences [under the

Sixth Amendment].").  The Tenth Circuit adhered to the general rule.  *See Broomes*, 358 F.3d at

1256 (defining "collateral consequences" as consequence[s] that "remain[ ] beyond the control

and responsibility of the district court in which that conviction was entered" and holding that

deportation is a collateral consequence of a criminal conviction), *rev'd by Padilla*; *see also*

*Varela v. Kaiser,* 976 F.2d 1357, 1358 (10th Cir. 1992) ("While the Sixth Amendment assures an

accused of effective assistance of counsel 'in criminal prosecutions,' this assurance does not

extend to collateral aspects of the prosecution.") (internal quotation marks and citation omitted).

At least one Circuit Court of Appeal has held that a trial court accepting a guilty plea

need not notify the defendant of the possibility of parole revocation in an unrelated criminal case

because revocation of parole is a collateral consequence of the plea.  *See Sanchez v. United*

*States*, 572 F.2d 210, 211 (9th Cir. 1977).  The Tenth Circuit cited *Sanchez* with approval in

*Harris v. Allen*, 929 F.2d 560, 562 (10th Cir. 1991) (holding that trial court was not obliged to

inform defendant in plea proceeding of possible collateral consequence that his guilty plea could

lead to a civil forfeiture).

The Court finds that the state appellate court's determination that Applicant's plea was valid, despite the apparent absence of an advisement about the consequences of the plea on his status as an Ohio parolee, was not contrary to, or an unreasonable application of *Boykin*, *Brady* or *Hill*. *Padilla* was decided after Applicant's conviction was final in 2008 and therefore is not applicable here. *Williams*, 529 U.S. at 390. Moreover, the Tenth Circuit has held that *Padilla* does not apply retroactively to cases on collateral review. *See U.S. v. Chang Hong*, ___ F.3d ___, 2011 WL 3805763 at *10 (10th Cir. 2011). At the time Applicant's conviction was final, the Supreme Court had not issued any holding that would require either the trial court or defense counsel to advise a criminal defendant about potential consequences of a guilty plea that were unrelated to the case in which the plea was entered. Because there was no clearly established Supreme Court precedent on this issue, Applicant's claim necessarily fails. *See House*, 527 F.3d at 1018. Applicant thus cannot prevail on the merits of his second claim.

### 2. *Merits of claim ten*

Even if Applicant could challenge the validity of his prior Ohio convictions in this action, his claim is without merit because Applicant has failed to show that his counsel was constitutionally ineffective in failing to challenge the prior convictions on direct appeal.

A claim that counsel on direct appeal was constitutionally ineffective is governed by the *Strickland* standard. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *see also Evitts v. Lucey,* 469 U.S. 387 (1985) (holding that criminal defendant is entitled to effective assistance of counsel on first appeal provided of right by the state). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). It therefore is difficult to demonstrate

that counsel was incompetent in failing to raise an issue on appeal. *Id.* In order to evaluate appellate counsel's performance, the court "look[s] to the merits of the omitted issue." *Cargle*, 317 F.3d at 1202 (quotation omitted). "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance . . . ." *Id.* On the other hand, if the omitted issue "has merit but is not so compelling, . . . [the court must assess] . . . the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission." *Id.* Omission of a meritless issue does not constitute deficient performance. *Id.* (citation omitted).

The Colorado Court of Appeals rejected Applicant's claim in the state post-conviction proceeding, concluding that Applicant was not prejudiced by appellate counsel's failure to raise the issue on appeal:

> Based on our review of the record, we conclude the trial court's finding that defendant was properly advised in both of his Ohio cases is supported by the record. Accordingly, because the trial court did not err in denying defendant's motion to suppress the Ohio convictions, he has not shown that he was prejudiced by appellate counsel's failure to raise that issue on appeal. *See People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007).[47]

This Court affords the state courts' factual findings a presumption of correctness so long as the habeas petitioner received a full, fair and adequate hearing in the state courts. *See Mayes v. Gibson*, 210 F.3d 1284, 1289 (10th Cir. 2000). The state trial found that Applicant was "properly advised" based on an affidavit and letter submitted by the Ohio trial judges who presided over Applicant's plea proceedings.[48] The trial court also considered an affidavit filed

---

[47] *Austin III*, Doc. #10-17, at 13-15.

[48] *See* State Court R. vol. 2, at 369-75, 379; *see also* 5/27/03 Hrg. Tr.

by Applicant's counsel in one of the Ohio cases.[49]  At the evidentiary hearing on Applicant's motion to suppress the prior convictions,  Applicant's counsel objected to the documents as hearsay statements that had not been subjected to cross-examination, but conceded that hearsay was admissible in an evidentiary hearing and that the objection was to weight, rather than admissibility.[50] The trial court agreed pursuant to a state evidentiary rule and admitted the evidence.  Applicant later filed a motion for reconsideration of the trial court's order denying his motion to suppress.  In the motion to reconsider, Applicant renewed his hearsay objection and contended that the trial court's reliance on evidence not subject to cross-examination violated his Sixth Amendment confrontation rights, as articulated in *Crawford v. Washington*, 541 U.S. 36 (2004) (holding that testimonial hearsay evidence cannot be admitted in a criminal prosecution unless the witness is unavailable or there was a prior opportunity for cross examination).[51]  The trial court denied the motion, finding that *Crawford* was not applicable to sentencing hearings.[52] Applicant raised the *Crawford* issue to the state appellate court in his post-conviction proceeding, but the Colorado Court of Appeals declined to address it on the procedural ground that Applicant should have raised the claim on direct appeal.[53]  This Court concluded that Applicant's *Crawford* claim (claim nine) was procedurally barred from federal habeas review.

The Court need not resolve the issue of whether Applicant received a full, fair and adequate hearing in the state trial court because even if a presumption of correctness does not

---

[49]*Id.* at 395-96.

[50]State Court R. 05/22/03 Hrg. Tr., at 12-13.

[51]*See* State Court R. vol. 2, at 303.

[52]State Court R. 10/28/2004 Hrg. Tr., at 8-9.

[53]*Austin III*, Doc. #10-17, at 10-13.

apply to the state appellate court's finding that Applicant was "properly advised," he has failed

to meet his burden to show that the Missouri plea is  invalid.

There is no record of the providency hearings for the Ohio cases.  Although Applicant

testified that his counsel in the first Ohio case told him he would not be allowed to testify,

Applicant also testified that he could not recall the substance of the trial court's advisement on

this matter.[54]  Accordingly, the only affirmative evidence Applicant presented in the state trial

court to show that his pleas were involuntary was his own testimony regarding statements made

by to him by counsel before he entered his first guilty plea.  This evidence does not suffice to

demonstrate that the trial court failed to advise him of his right to testify before accepting his

pleas.  *See Parke v. Raley*, 506 U.S. 20, 30 (1992) (final judgment of conviction pursuant to a

guilty plea is presumed valid, even in the absence of a transcript of the providency proceeding,

unless defendant makes an affirmative showing of invalidity); *see also Krejcarek*, 453 F.3d at

1297-98 ("Self-serving statements by a defendant that his conviction was constitutionally infirm

are insufficient to overcome the presumption of regularity accorded prior convictions") (citing

*Cuppett v. Duckworth,* 8 F.3d 1132, 1139 (7th Cir. 1993)).  Moreover, to the extent Applicant

asserts that his guilty plea was rendered invalid by counsel's erroneous advice, his failure to

demonstrate a deficient advisement by the trial court on his right to testify precludes any finding

of prejudice–i.e, that but for counsel's asserted erroneous advice, he would not have pled guilty

but  would have insisted on proceeding to trial.  *See Hill*, 474 U.S. at 56-59.

The Court finds that the state appellate court's determination that appellate counsel was

not ineffective in failing to challenge the Ohio convictions on appeal comported with applicable

federal law.  Applicant therefore is not entitled to relief for his tenth claim.

---

[54]State Court R. vol. 2, at 357.

C.      **Claim Four**

In claim four, Applicant asserts that the trial court erred in determining that the

prosecution presented sufficient evidence that he was convicted previously of three felonies, in

violation of the Fifth and Fourteenth Amendments.  Specifically, Applicant argues that proof of

the Missouri conviction was inadequate, and, therefore, all three habitual criminal adjudications

must be vacated because the Ohio convictions occurred outside the statutory ten-year period.

"When reviewing the sufficiency of the evidence on a habeas corpus petition, the

relevant question is 'whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" *Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004)

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  In applying the

*Jackson* standard, the federal habeas court looks to Colorado law to determine the substantive

elements of whether Applicant should have been found guilty of the crime of conviction of a

prior felony.  *Id.*; *see also Titsworth v. Mullin*, 415 F. App'x 28, 30-31 (10th Cir. 2011)

(unpublished).

The Court remains mindful that a federal habeas court does not review state court

determinations on matters of state law, unless an erroneous evidentiary ruling violated the

petitioner's federal due process rights.  *See Estelle*, 502 U.S. 67-68; *Mayes*, 210 F.3d at 1293.

On direct review of Applicant's conviction, the state appellate court made the following

factual findings, which are presumed correct in this federal habeas proceeding:

> During [Applicant's] habitual hearing in this case, the prosecutor
> presented several exhibits pertaining to [Applicant's] arrests for and convictions
> of the prior felonies and a fingerprint card from [Applicant]  which was used as an
> example for comparison.  Exhibit 111 was the fingerprint card from [Applicant's]
> Missouri case. [Applicant] objected to it, contending that it was not properly
> authenticated.  The trial court deferred ruling on [Applicant's] objection, and the

prosecution then presented the expert testimony of a criminalist and an expert in the area of fingerprint comparison and identification, who testified that the fingerprints from [Applicant's] known sample in this case matched the fingerprints connected with [Applicant's] Missouri case.

The trial court admitted the exhibit, concluding that based on the expert testimony and the general nature of the exhibit, "the requirement of authentication of identification as a condition precedent to admissibility is satisfied. . . sufficient to support a finding that the matter in question is what [its] proponent claims it to be." We perceive no abuse of discretion by the court in so ruling. . . . .

Along with the fingerprint evidence and the expert testimony, [Applicant's] name, date of birth, identification number, and offense that appear on Exhibit 111 also appear on the complaint filed against him in the Missouri case.[55]

The state appellate court then concluded that the evidence, "viewed in the light most favorable to the prosecution, was sufficient to connect the person who was convicted in the earlier case with [Applicant], and was sufficient to permit the trial court to conclude beyond a reasonable doubt that he was the person named in the prior conviction."[56]

Applicant argues that the fingerprint card failed to meet authenticity requirements imposed by state evidentiary rules and that the testimony of the fingerprint expert was "legally inadequate" to establish his identity as the person named in the Missouri conviction.[57] However, under Colorado law, evidence of fingerprint cards and expert testimony linking those prints to the defendant is not the only valid method for proving the defendant's identity. *See*

---

[55]*Austin I*, Doc. #25-1, at 21-23; *see also* People's Exs. 111 and 112.

[56]*Austin I*, Doc. #25-1, at 23-24.

[57]Application, at 8.

§ 18–1.3–802, C.R.S. (2010)[58]; *People v. Carrasco*, 85 P.3d 580, 583 (Colo. App. 2003) (affirming trial court's ruling that fingerprint evidence, police department number, and the circumstantial evidence from transcripts of defendant's providency and sentencing hearings for earlier cases demonstrated beyond a reasonable doubt that defendant was the same person convicted and sentenced in the two previous cases); *People v. Benton*, 829 P.2d 451, 454 (Colo. App. 1991) (evidence was sufficient without DOC-specific fingerprints because the defendant was assigned same inmate number as in prior incarcerations, during which photographs and fingerprints, admitted at trial, were obtained).  Applicant has not presented any clear and convincing evidence to rebut the state courts' factual findings, which are supported by the transcript of the habitual criminal trial,[59] that he was the person who was convicted of a felony in Missouri in 1983.  As such, the Court finds that the state appellate court's determination of Applicant's claim was reasonable under the *Jackson* standard.  Applicant therefore cannot prevail on his fourth claim for relief.

**D.  Claims Five, Six, Seven and Eight**

---

[58]Section 18-1.3-802, C.R.S. (2010), states:

> On any trial under the provisions of this section and sections 18-1.3-801 and 18-1.3-803, a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such party. Identification photographs and fingerprints that are part of the record of such former convictions and judgments, or are part of the records kept at the place of such party's incarceration or by any custodian authorized by the executive director of the department of corrections after sentencing for any of such former convictions and judgments, shall be prima facie evidence of the identity of such party and may be used in evidence against him or her.

[59]*See generally* State Court R. 10/28/04 Hrg. Tr.

In his fifth, sixth and seventh claims, Applicant asserts that his Sixth Amendment right to effective assistance of trial counsel was violated when counsel failed to: (1) impeach a prosecution witness with his prior felony convictions (claim five); (2) interview the prosecution's witnesses (claim six); (3) call the defense investigator as a witness to impeach the credibility of a prosecution witness (claim seven); and, (4) retain a defense expert (claim eight).

To prevail on his claims of ineffective assistance of counsel, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted). Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693. The likelihood of a different result must be substantial, not just conceivable. *Id.* This Court need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one. *Id.* at 697.

> **1.** *Counsel's failure to impeach a prosecution witness with his prior felony convictions and to call the defense investigator as a witness   (claims five and seven)*

Applicant argues that his Sixth Amendment right to effective assistance of trial counsel was violated because counsel failed to impeach the credibility of a prosecution witness, T.E., with his prior felony convictions and motive for testifying. He also asserts that counsel should have called the defense investigator to testify that T.E. was seeking a plea deal from the prosecutor in exchange for his testimony against Applicant.

The Colorado Court of Appeals addressed Applicant's claims in the state post-conviction proceeding, applied the *Strickland* standard, and assumed that counsel's performance was deficient with regard to his approach to T.E.[60] However, the state appellate court rejected Applicant's claims for lack of prejudice based on the following reasoning:

> Here, T.E. testified that he witnessed the assault from his jail cell, and that he saw defendant strangle the victim with a piece of white towel or sheet, using it as a garrote around the victim's neck. However, he also acknowledged that he had initially denied having seen the altercation. He stated that he later wrote a note, which he gave to one of the guards, indicating that he saw defendant strangle the victim.
>
> During cross-examination, T.E. admitted that he (1) initially wrote the note to obtain a benefit, namely to be moved to a different location in the jail; (2) was in jail at the time on a pending criminal charge which was later resolved, and (3) currently had another pending felony matter. Also during cross-examination, defense counsel questioned T.E. about the inconsistencies between his initial statement and his testimony at trial, and how much of the incident T.E. actually saw from the small window in his cell, and how much information he had gotten about the incident second hand.
>
> We conclude that trial counsel sufficiently attacked T.E.'s credibility concerning his criminal history and his motive for testifying. We fail to see how impeaching T.E. with additional felony convictions (assuming such convictions exist, although there is no record evidence that they do, apart from defendant's assertion), or calling the investigator to testify that T.E. was seeking favorable treatment from the prosecution in exchange for his testimony, would probably have affected the outcome of the trial. Accordingly, defendant has not established that the alleged errors prejudiced him. . . .[61]

---

[60] *Austin III*, Doc. #10-17, at 3-5.

[61] *Id.* at 5-6.

The Court finds that it was reasonable for the Colorado Court of Appeals to determine that Applicant was not prejudiced by counsel's presumed deficient performance with regard to prosecution witness T.E.  Again, the state appellate court's factual findings concerning defense counsel's cross-examination of T.E. are presumed correct and are supported by the state court record.[62]  Applicant has not presented any clear and convincing evidence to rebut those findings. Counsel engaged in a thorough cross-examination of T.E.  and made every effort to undermine T.E.'s credibility.  The likelihood that additional attacks on T.E.'s credibility, which was already in question, would have altered the result of Applicant's trial is not substantial.  *See Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (undisclosed impeachment evidence is cumulative "when the witness has already been sufficiently impeached at trial") (internal quotation marks and citation omitted).  Accordingly, Applicant is not entitled to relief for his fifth and seventh claims.

### 2.  *Failure to interview prosecution witnesses (claim six)*

Applicant next argues that his right to effective assistance of counsel was violated because trial counsel failed to interview two of the prosecution's witnesses, Benjamin Williams and Shaunte Oliver, who, if called, would have provided testimony favorable to the defense. Specifically, Applicant argued to the Colorado Court of Appeals in the state post-conviction proceeding that the two witnesses would have testified that they were present in the room when the assault occurred and did not see any weapons being used in the altercation.[63]

---

[62]State Court R. 05/28/03 Trial Tr., at 157-169.

[63]Doc. #10-15, at 10; *see also* State Court R. vol. 2, at 542-43 (affidavits of Benjamin Williams and Shaunte Oliver).

The Colorado Court of Appeals rejected Applicant's claim, concluding that defense counsel's alleged failure to interview the witnesses and the subsequent omission of their testimony at trial did not prejudice Applicant, based on the following reasoning:

> At trial, multiple witnesses testified that a sheet or towel was used to strangle the victim.
>
> > • The victim testified that he was strangled with a piece of sheet and that he saw it come around his neck from the corner of his eye.
> >
> > • T.E. testified that he saw defendant get a ripped sheet or towel from his cell and use it to strangle the victim.
> >
> > • The physician who examined the victim at the hospital testified that the victim's injuries were caused by strangulation and that most likely the strangulation was accomplished with some sort of ligature.
> >
> > • Although another witness, M.V., did not testify at trial, he told one of the investigating officers that a sheet was used in the incident.
>
> In addition, one of the guards who investigated the incident testified that he interviewed B.W., and that B.W. did not admit to seeing any part of the incident.
>
> Based on the foregoing, there was overwhelming evidence that a weapon, in the form of a sheet or towel, was used in the assault on the victim. Indeed, the two affidavits at issue merely state that these witnesses did not see "any weapons" being used, but the affidavits nowhere state what the witnesses meant by the quoted term. Therefore, we conclude that there is not a reasonable probability that counsel's failure to obtain  testimony from these witnesses affected the outcome of the trial.[64]

The state appellate court's conclusion that prejudice was lacking was not an unreasonable application of *Strickland.*   Mr. Williams stated that "at no time did either Mr. Walker or [Applicant] have anything in their hands," and that "as far as I could see, no weapons were

---

[64] *Austin III*, Doc. #10-17, at 7-9.

involved."[65]  Mr. Oliver also stated that "there were no weapons used."[66]  As noted by the

Colorado Court of Appeals, however, it is unclear how the affiants define the term "weapon."

And, more importantly, the victim's testimony that he was strangled by a piece of sheet was

corroborated by other witnesses, including the victim's treating physician.[67]  The state appellate

court's finding that "there was overwhelming evidence that a weapon, in the form of a sheet or

towel, was used in the assault on the victim" is a factual finding that Applicant has failed to rebut

with clear and convincing evidence.  The affidavits from the inmates are too vague to establish a

reasonable probability that the outcome of Applicant's trial would have been different had

counsel presented the witnesses' testimony at trial.   Applicant thus cannot prevail on his sixth

claim.

### 3.      *Failure to retain a defense expert (claim eight)*

In claim eight, Applicant contends that trial counsel was ineffective in failing to retain a

medical expert to rebut the prosecution's expert.  In the state post-conviction proceeding, the

Colorado Court of Appeals resolved Applicant's claim as follows:

> [Applicant] has not specified what information counsel could or would have
> obtained from an asphyxiation expert that likely would have affected the outcome
> of the trial.  His conclusory allegations are insufficient to demonstrate that he
> might be entitled to postconviction relief. *See People v. Rodriguez*, 914 P.2d 230,
> 300 (Colo. 1996) (a trial court may also deny relief where the allegations of
> counsel's deficient performance are merely conclusory, vague, or lacking in
> detail); *see also People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003).[68]

---

[65] State Court R. vol. 2, at 542.

[66] *Id.* at 543.

[67] *Id.*, 05/29/03 Trial Tr., at 19-22, 74.

[68] *Austin III*, Doc. #10-17, at 7.

The state appellate court's determination of Applicant's claim was consistent with *Strickland.* Because Applicant failed to articulate how an expert would have aided his defense, he necessarily failed to establish that he was prejudiced by the alleged failure to procure expert testimony. *See United States v. Hunt*, 435 F. App'x 721, 726 (10th Cir. 2011) (unpublished) (rejecting ineffective assistance of counsel claim where habeas petitioner failed to indicate "how a rebuttal expert would have aided in his defense, or how his attorney's failure to call a rebuttal expert was prejudicial to him"); *see also Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007) (rejecting ineffective assistance of counsel claim when habeas petitioner failed to indicate "why counsel's failure to object to the evidence was deficient and how such alleged failure prejudiced him"). Moreover, the state court record demonstrates that defense counsel extensively cross-examined the state's expert, as well as other prosecution witnesses who testified that the victim was strangled.[69] Under such circumstances, the failure to call a rebuttal expert is not substandard performance. *See Reinert v. Larkins,* 379 F.3d 76, 95 (3rd Cir. 2004) (holding that counsel was not constitutionally ineffective for failing to call expert witness in rebuttal when counsel "thoroughly cross-examined" the state's witnesses. Accordingly, Applicant is not entitled to federal habeas relief for his eighth claim.

## IV. ORDER

Accordingly, it is ordered that the Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. # 1) is dismissed with prejudice. It is further ordered that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483–85 (2000).

---

[69]State Court R. 5/28/03 Trial Tr. at 90-98; 5/29/03 Trial Tr. at 28-39; 84-100; 130-131; 157-169.

Dated this 22nd day of December, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge